## MORTGAGE NOT CONSTRUCTIVE NOTICE.

[Circuit Court of Cuyahoga County.]

THE WOOD SASH, DOOR & PAINT COMPANY v. A. W. BURROWS ET AL.

Decided, November 23, 1903.

*Record of Duly Executed Mortgage of an Interest in Land Under Contract is not Constructive Notice to a Subsequent bona fide Purchaser of the Premises.*

Under proceedings for the sale of an entailed estate a trustee appointed by the court contracted to sell the premises to A, the contract being approved by the court; A mortgaged his equitable interest under his contract to plaintiff, the mortgage being executed and acknowledged, left for record and recorded, as required for deeds. Thereafter A assigned his contract to B and C, the court approved the assignment, the assignee complied with the contract, received the deed from the trustee which was confirmed by the court, and thereafter conveyed the premises to H without actual knowledge of the mortgage on the part of any of them. In an action to foreclose the mortgage. *Held:* That the mortgagee was not entitled to a sale of the premises.

WINCH, J.; HALE, & J., and MARVIN, J., concur.

Heard on appeal.

Thomas Bolton died years ago leaving certain of his real estate entailed. His executor began proceedings under the statutes regulating the sale of entailed estates, pursuant to which the court appointed Charles C. Bolton trustee, with directions that he plat and sell said real estate.

On October 8, 1897, said Charles C. Bolton, as such trustee, entered into a written contract for the sale to the defendant, A. W. Burrows, of a certain lot in the plat which he had made. The price of the lot was $1,000 and the contract was signed by the parties to it and their signatures attested by two witnesses, but it was not acknowledged. This contract was reported to the court, duly approved and confirmed by it, ordered to be recorded on the records of said court, and thereafter duly recorded on said records.

Burrows took possession of the lot pursuant to the terms of his contract and began the erection of a dwelling house thereon. He had paid $300 on the consideration named in the contract, and expended $2,000 in the erection of said house, when, on March 3, 1898, being still in possession of said premises, he executed and delivered to plaintiff a mortgage on said lot to secure the sum of $580 due for material and supplies therefore furnished by it towards the erection of said house. Said mortgage was executed in all particulars in accordance with Section 4106, Revised Statutes, and was duly left for record with the county recorder on the day it was executed, and thereafter by him duly recorded.

After the delivery and recording of said mortgage, but on the same day, Burrows assigned his contract for the purchase of said lot to the defendants, Clark and Benton, and delivered possession of the premises to them. This assignment of the contract was reported to the court, approved by it and the trustee was ordered to carry out the terms of the contract with Clark and Benton upon their fulfilling their part of said contract. This they did, paid the balance of the purchase price due thereon, and received from the trustee a proper deed of the premises, which they duly recorded.

Thereafter Clark and Benton conveyed said premises for a valuable consideration by warranty deed to the defendant, Grace Heyner.

Neither Clark and Benton nor Grace Heyner had any actual knowledge of the mortgage to plaintiff until after the transactions above stated.

Suit being brought by plaintiff to foreclose its mortgage, the only question presented for the consideration of this court is whether the record of said mortgage was constructive notice to subsequent *bona fide* purchasers of said premises without actual notice of the mortgage.

We think this case must be decided against the plaintiff upon the authority and reasoning of the case of *Churchill* v. *Little*, 23 O. S., 301, the syllabus of which reads as follows:

"When an executory contract for the purchase of land is assigned by the purchaser, either absolutely or as collateral

security, and the assignee subsequently mortgages the contract-
ed premises, the relative rights of the assignee and mortga-
gee are not determined by the fact that the mortgage was duly
executed and recorded. In such case, and between parties
thus situated, the act providing for the execution and record-
ing of deeds has no application.''

When the above case was decided the statute regulating
the execution of instruments for the conveyance of land in-
cluded only instruments by which land should be conveyed or
otherwise affected or incumbered *in law*. The court held that
an executory contract for the purchase and sale of land is
not an instrument of that character. That though it is a legal
instrument and forms the basis of legal as well as equitable
remedies, it does not convey, or purport to convey, or *legally*
to incumber or affect any estate or interest in the land.

The statute now in force (Section 4106) provides how ''a
deed, mortgage, or lease of any estate or interest in real prop-
erty'' shall be executed, and there can be no question that
the chapter of the statutes treating on conveyances and incum-
brances makes no provision for the execution of land contracts.

In said chapter Sections 4133 and 4134 provide that all
mortgages and all other deeds and instruments of writing
for the conveyance or incumbrance of any lands, tenements
or hereditaments, ''executed agreeably to the provisions of the
chapter,'' shall be recorded, etc.

There being no provision in the chapter regulating the ex-
ecution of land contracts, it follows that such contracts are
not entitled to record. The contract between Bolton, trustee,
and Burrows was not acknowledged, in itself a fact preclu-
ding its record. The contract not being entitled to record, it
follows under the decision in the Churchill case *supra,* that
the mortgage, ''the instrument by which the contract is as-
signed, stands necessarily upon the same ground.'' *Churchill*
v. *Little,* 23 O. S., 301-308.

Following the reasoning of the above case on page 310 of
said report, if we are right in the above conclusion, the plaint-
iff, as well as the defendants, Clark and Benton, are to be re-
garded as the assignees of the equitable interest of Burrows,

and, as such, they stand upon the same footing, with at least this difference, that the assignment to the plaintiff was prior in time.

"The general rule in such cases is, that he who is first in time is first in right, but this rule is not of universal application. In a contest between equities it is not allowed to prevail where it appears from any fact or circumstance in the case, independent of priority of time, that the holder of the junior equity has the better right to perfect his equitable title or interest by calling in, the outstanding legal estate. In such case he has the better equity. *Prima facie,* however, the assignee of an equity must abide the case with the assignor, and the superiority of the equity of the first purchaser is, in general, undeniable, unless he has been guilty of laches, which vitiate his title or deprive him of the right to enforce it against others who have been more vigilant."

Confining our inquiries for the present as to the relations of plaintiff to Clark and Benton, was plaintiff guilty of any such laches as to deprive it of the right to enforce its mortgage against them?

It seems that plaintiff gave no notice of its mortgage to Bolton, trustee, neither did it report the mortgage to the court and ask for its approval of this partial assignment of the contract to it. The record of the mortgage was certainly no notice, constructive or otherwise, to the court or to Bolton, trustee, if he may be called the vendor. The better view of the case is that the court, not the trustee or officer appointed by it to make sale, is the vendor; but assuming that Bolton, trustee, was the, vendor, there is no rule of law requiring a vendor to search the records for incumbrances by the vendee before deed is finally delivered pursuant to the contract.

Had plaintiff notified the trustee, actual knowledge of its claim would doubtless have come to Clark and Benton before the trustee accepted them on the contract with Burrows and before the court approved the assignment of the contract to them.

The plaintiff neglected to require Burrows to produce his contract with the trustee and deposit it with the mortgage; had this been done Burrows would have been unable to assign

the contract to Clark and Benton or they would have been put upon inquiry as to what had been done with the contract by Burrows.

Not only did plaintiff give the trustee and court no notice of its mortgage, but it at no time paid or offered to pay the balance due on the contract to the trustee.

Plaintiff took its mortgage as security for a pre-existing debt, and it would seem that by its laches it lost the better right it may have had by reason of its prior equity to perfect its title.

If then, as between plaintiff and Clark and Benton, the latter had the better right to call in the outstanding legal title, and did so, in how much better position is the defendant Grace Heyner, the present owner of the *legal* title, who is a *bona fide* purchaser for value and without notice of plaintiff's claims.

It remains to consider the contention made by plaintiff that Grace Heyner holding a title coming through the proceedings of the court for the sale of an entailed estate, by the record of such proceedings was advised that Burrows at one time had an interest in the property by the way of executory contract, and so was bound to search the records for conveyances and incumbrances by Burrows during the time that he held such interest. In other words the plaintiff urges the application of the rule of notice from *lis pendens*.

As we understand the doctrine of *lis pendens*, a pending suit is notice to all the world *during its pendency* of rights claimed by parties to the suit. Grace Heyner bought long after final order regarding this property, and when the record of the suit had to be examined by her it showed that the court had approved a contract with Burrows; that he had assigned said contract to Clark and Benton; that they had succeeded to all of Burrows' rights, had complied with the terms of the contract, became entitled to a deed and had received it pursuant to the court's orders. She found an adjudication of the court and a decree transferring the title to the property from the Bolton heirs to Clark and Benton. Burrows was as much concluded by this decree as anybody could be. In one sense, as purchaser under the order of sale, he was a party to the case and all his rights, including all rights granted by him during

the pendency of the case, were judicially determined therein.

Plaintiff acquiring its rights from Burrows during the pendency of this case which was *lis pendens* to it, could have applied to the court for an adjudication of its claims. By failing to do so it is bound by the final decree in the case vesting the title in Clark and Benton.

We find there is no equity in plaintiff's claim, and decree may be drawn accordingly.

*Gibbons, Dunning & Tracy*, for plaintiff.

*Arnold Green, Squire, Sanders & Dempsey, Henderson & Quail*, for defendants.